Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 216 | **DATE** | October 2, 2001 |
| **CASE TITLE** | Teeters et al v. Lason, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is plaintiffs' motion for final judgment on the pleadings with respect to Count IV of the Complaint [17-1] the motion is granted in part and denied in part. SEE ATTACHED FOR DETAILS. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | Steven Gistenson, Esq. Fax: 312/782-8416 | | **Document Number** |
| | No notices required. | | number of notices | |
| x | Notices mailed by judge's staff. | Thomas Tallerico, Esq. 248-743-6002 | OCT 0 5 2001 | |
| | Notified counsel by telephone. | Alan Madans, Esq. 312/372-2350 | date docketed | 30 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to _____ | 01 OCT -4 PM 4: 11 | 10/2/01 date mailed notice | |
| KAM | courtroom deputy's initials | Date/time received in central Clerk's Office | KAM mailing deputy initials | |
| | | (Reserved for use by the Court) | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARILYN I. TEETERS, PATRICK M. ESSIG, JULIE A. ESSIG, THE VINE FOUNDATION, and THE 1999 MARTIN D. AND NAOMI FERN HILL CHARITABLE REMAINDER TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> LASON, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 01 C 216 <br> ) <br> ) <br> ) <br> ) |

DOCKETED OCT - 5 2001

## MEMORANDUM OPINION

Before the court are two motions: (1) plaintiffs' motion for judgment on the pleadings with respect to Count IV of the Complaint; and (2) plaintiffs' motion for final judgment on the pleadings or in the alternative for summary judgment with respect to Counts I, II, and III of the Complaint. For the reasons stated below, the motion regarding Count IV is granted; the motion regarding Counts I, II, and III is granted in part and denied in part.

## BACKGROUND

In April 1999, plaintiffs, Marilyn I. Teeters, Patrick M. Essig, Julie A. Essig, The Vine Foundation, and The 1999 Martin D. and Naomi Fern Hill Charitable Remainder Trust, sold the total outstanding shares of an Illinois corporation called MSCI, Inc.

("MSCI") to defendant Lason, Inc. ("Lason"). Plaintiffs and Lason entered into two contracts: an "Agreement for the Purchase and Sale of Stock" (the "Stock Agreement") and a "Holdback Agreement." The Initial Purchase Price was to be paid by Lason as follows: cash in the amount of $9 million; $1 million which was to be paid later pursuant to the terms of the Holdback Agreement (the "Holdback Funds"); and $847,262.12 paid to MSCI's creditors. (Complaint, Ex. A, Stock Agreement, § 1.2.)

In addition to the Initial Purchase Price, Lason agreed to pay up to three "Additional Purchase Payments" (also called earn-out payments) aggregating up to $10 million, based upon performance criteria defined in the Stock Agreement. For instance, Lason agreed to pay an Additional Purchase Payment (the "2000 Additional Purchase Payment") to plaintiffs for the 12-month period ending April 30, 2000 (the "2000 Period"), in an amount not to exceed $2.5 million, in the event that MSCI's actual EBITDA exceeded a target EBITDA for that period.[1] The Stock Agreement required Lason to calculate MSCI's actual EBITDA for the 2000 Period no later than

---

[1] The Stock Agreement defines "EBITDA" as follows: "EBITDA shall mean, for each year referenced above, the pre-tax net income of [MSCI] before net interest expense, depreciation and amortization determined on a stand-alone basis in accordance with generally accepted accounting principles consistently applied, (1) plus, to the extent deducted in determining net income and without duplication, the sum of any extraordinary losses; (2) plus the difference between [MSCI's] actual costs for welfare type benefits provided in accordance with [Lason's] plans and 105% of [MSCI's] budgeted costs for providing welfare type benefits as set forth in the budgets previously submitted by [MSCI] to [Lason]; and (3) minus, to the extent included in determining net income and without duplication, any extraordinary gains. Complaint, Ex. A, Stock Agreement, at § 1.4(C).

July 31, 2000, and to pay any earned Additional Purchase Payment no later than 5 days thereafter. (Complaint, Ex. A, Stock Agreement, § 1.4(A), (D)).

Lason also agreed to pay an Additional Purchase Payment to plaintiffs (the "2001 Additional Purchase Payment") for the next 12-month period ending on April 30, 2001 (the "2001 Period") if the EBITDA for that period was greater than a target EBITDA. Similar to the 2000 Additional Purchase Payment, Lason was required to calculate MSCI's EBITDA for the 2001 Period no later than July 31, 2001, and to pay any earned 2001 Additional Purchase Payment no later than five days thereafter. (Complaint, Ex. A, Stock Agreement, § 1.4(A), (D)).

The purpose of the Holdback Agreement was to secure any possible indemnity claims Lason could have against plaintiffs. The Holdback Agreement provided as follows:

> Upon the later of 1 year following the Closing Date and the resolution of all known and pending Claims, followed by any associated reduction in the Holdback Funds, [Lason] shall pay to [plaintiffs] the remaining balance, if any, of the Holdback Funds, plus interest on $1,000,000.00 accrued at the rate of 4.5% per annum from the Closing Date.[2]

Complaint, Ex. B, § 4.

The Complaint alleges that Lason breached both the Stock Agreement and the Holdback Agreement. Plaintiffs claim that Lason failed to pay them the $1 million Holdback Funds, which became due

---

[2] The "Closing Date" was April 20, 1999. (Complaint, Exs. A & B.)

on April 19, 2000. The Complaint also alleges that Lason failed to timely calculate the 2000 Additional Purchase Payment; failed to timely provide plaintiffs with a statement of that calculation; and failed to pay plaintiffs the 2000 Additional Purchase Payment. Moreover, while this is not alleged in the Complaint (because the Complaint was filed in December 2000 and has not been amended), plaintiffs contend that Lason failed to timely calculate the 2001 Additional Purchase Payment; failed to timely provide plaintiffs with a statement of that calculation; and failed to pay plaintiffs the 2001 Additional Purchase Payment.

Plaintiffs originally filed this action in the Circuit Court of Cook County, seeking an accounting of all amounts due to them pursuant to the Agreements, an order restraining defendant from dissipating MSCI funds and imposing a constructive trust, damages for breach of the Agreements together with pre-judgment interest, and reasonable attorney's fees. On January 11, 2001, Lason removed the action to this court on the basis of diversity jurisdiction. Plaintiffs now move for final judgment on the pleadings, or in the alternative for summary judgment, with respect to Counts I, II, and III of the Complaint (accounting; preliminary injunction and constructive trust; and breach of the Stock Agreement). Plaintiffs have also moved for judgment on the pleadings with respect to Count IV of the Complaint (breach of the Holdback Agreement). As we

explained in our order of September 24, 2001, we treat that motion as a summary judgment motion.

## DISCUSSION

### A. Plaintiffs' Motion as to Counts I, II, and III

Plaintiffs move for judgment on the pleadings, or in the alternative for summary judgment, with respect to Counts I, II, and III. We will treat the motion as one for summary judgment, as the parties have briefed it in that manner and because we are considering matters outside the pleadings.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Management Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence

that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

Count III of the Complaint is a claim for breach of the Stock Agreement. Specifically, the Complaint alleges that Lason (1) failed to timely calculate the 2000 Additional Purchase Payment; (2) failed to timely provide to plaintiffs a statement of the calculation; and (3) failed to pay plaintiffs the 2000 Additional Purchase Payment. Plaintiffs calculate the 2000 Additional Purchase Payment as $2.5 million and submit the affidavit of Peggy L. Prather, MSCI's Accounting Manager, to support their calculation.[3]

Lason admits that it has not provided any statement to plaintiffs regarding the calculation of the 2000 Additional Purchase Payment. (Plaintiffs' Local Rule 56.1(a)(3) Statement, Ex. 3, Defendant's Responses to Plaintiffs' Requests for Admission, ¶ 9; Lason's Response to Plaintiffs' Local Rule 56.1(a)(3) Statement, ¶ 26.) Lason also admits that it is liable to plaintiffs for the 2000 Additional Purchase Payment. (Defendant's

---

[3] The Stock Agreement provided that the 2000 Additional Purchase Payment would be calculated as follows. The target EBITDA was $1.8 million. If MSCI's 2000 Actual EBITDA were greater than the target EBITDA, then each plaintiff would be entitled to his or her pro rata share of an Additional Purchase Payment "in an aggregate amount equal to 4 times the difference between the 2000 Actual EBITDA and 2000 Target EBITDA, in an amount not to exceed $2,500,000.00." (Complaint, Ex. A, Stock Agreement, § 1.4(A).) Because plaintiffs have calculated "4 times the difference between the 2000 Actual EBITDA and 2000 Target EBITDA" to be greater than $2.5 million, they contend that they are entitled to $2.5 million. (Plaintiffs' Memorandum in Support of Motion at 6-7.)

Response at 1-2.) However, Lason disputes plaintiffs' calculation and requests additional discovery pursuant to Fed. R. Civ. P. 56(f).[4]

Lason contends that there are "serious questions regarding the validity of plaintiffs' earn-out calculation for the 2000 Period" and that it has "identified areas requiring further discovery." (Defendant's Response at 4-5.) In support of its request for additional discovery, Lason submits the affidavit of its interim Chief Financial Officer, Douglas S. Kearney. Kearney states that "[p]laintiffs' claim that Lason has had access to all of their financial information is specious." (Kearney Affidavit, ¶ 2). The choice of the word "specious" over the words "false" or "incorrect" is notable, as Kearney does not state that Lason has <u>not</u> had access to all of plaintiffs' financial information. Kearney also does not state why this claim is "specious," other than to note that MSCI's operations have not been "integrated" into Lason. However, it does not follow that Lason needs additional information from plaintiffs simply because MSCI's operations have not been "integrated" into Lason's. In addition, Kearney never claims that Lason has asked MSCI or plaintiffs for any specific information or that Lason has been denied any information upon request. Rather, he simply states

---

[4] Rule 56(f) provides: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

that "plaintiffs have not provided" certain vague kinds of information. These statements indicate that if Lason is lacking any discovery, which we doubt, it is solely due to Lason's own delay.

Kearney also refers to "potential errors" and "practices which may have resulted in additional errors" and posits several instances in which plaintiffs <u>could</u> have erred in their calculations. He claims that reconciliation of certain expenses recorded by MSCI "must be performed" but wholly fails to explain why the reconciliation has not yet been performed in light of the ample time Lason has had to do so.

Lason's argument rings hollow in the face of our order of June 5, 2001. As we pointed out, the proper time for Lason to request additional time for discovery was <u>before</u> it responded to plaintiffs' motion. We directed Lason that if it could demonstrate that additional time was necessary <u>to respond</u> to the instant motion, it could ask for additional time to conduct discovery. Instead, Lason <u>now</u> asks for additional discovery in its response brief, without specifying how much time it needs. We also directed Lason to support any request for additional time with a designation of the specific kind of discovery it needs. Instead, Lason fails to specify exactly what information it requires. In short, Lason's

vague assertions and speculative statements fail to demonstrate that additional discovery is necessary to resolve this motion.[5]

Lason fails to show that there is a genuine issue of material fact as to Lason's liability for the 2000 Additional Purchase Payment as calculated by plaintiffs. In other words, we find that there is no genuine dispute that Lason is liable to plaintiffs for the 2000 Additional Purchase Payment in the amount calculated by plaintiffs. Thus, summary judgment for plaintiffs on Count III is granted.

Although plaintiffs contend in their motion that they are owed the 2001 Additional Purchase Payment, the Complaint does not seek anything as to the 2001 Additional Purchase Payment. Accordingly, summary judgment is denied as to that claim.

Plaintiffs' motion also seeks summary judgment as to their claims for equitable relief in Counts I and II of the Complaint. However, plaintiffs present no adequate discussion regarding summary judgment on these claims. Therefore, summary judgment as to Counts I and II is denied.[6]

---

[5] Moreover, Lason already asked for, and received, a two-week extension of time to file its response so that it could review information that plaintiffs had produced. Plaintiffs contend that Lason's strategy in this case is to delay a judgment, also noting that, at the parties' Rule 16 conference with the court, Lason did not dispute that it is in financial trouble. We must say that Lason's approach to this case causes us concern.

[6] We are inclined to dismiss Count I, which seeks an accounting of all funds due to plaintiffs, because it appears to be moot due to the grant of summary judgment on Counts III and IV. However, we will not do so at this juncture.

## B. Plaintiffs' Motion as to Count IV (Holdback Claim)

Count IV of the Complaint is a claim for breach of the Holdback Agreement. Plaintiffs allege that Lason failed to pay them $1 million plus interest as required by the contract. Lason does not dispute that it is liable for the principal amount. (Lason's Surreply at 1.) Therefore, summary judgment for plaintiffs is appropriate as to Count IV of the Complaint.

However, there is an issue as to the appropriate interest on the principal. There are three relevant periods of interest at issue here. Plaintiffs assert that (1) a 4.5% interest rate should apply to the year-long period specified in the Holdback Agreement (April 20, 1999 to April 18, 2000), pursuant to that Agreement; (2) a 5.0% interest rate should apply from the date of defendant's breach of the Holdback Agreement through the filing of plaintiffs' Complaint (April 19, 2000 to December 7, 2000), pursuant to Michigan common law; and (3) a 12% interest rate should apply from the date of the filing of the Complaint to the date of judgment, pursuant to Michigan statute.[7]

Lason disputes plaintiffs' calculation only as to the second period, arguing that the contractual 4.5% rate should apply, rather than the 5.0% pre-judgment rate pursuant to Michigan common law.

---

[7] Mich. Comp. Laws § 600.6013(5) ("For complaints filed on or after January 1, 1987, if a judgment is rendered on a written instrument, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually, unless the instrument has a higher rate of interest.")

- 11 -

Plaintiffs reply that the court is not constrained to apply a contractually-specified rate of interest to periods in which a party is in breach of that contract. We agree with plaintiffs. Moreover, the cases cited by plaintiffs indicate that, under Michigan law, pre-judgment interest at a rate of 5% is allowed from the date when the claim accrued, or, in other words, the date compensation would have been due had it been paid voluntarily.[8] See Holland v. Earl G. Graves Publ'g Co., 33 F. Supp. 2d 581, 583-84 (E.D. Mich. 1998); Kvaerner U.S., Inc. v. Hakim Plast Co., 74 F. Supp. 2d 709, 723 (E.D. Mich. 1999). Accordingly, we concur with plaintiffs' calculation of interest with respect to the Holdback Agreement.

**CONCLUSION**

For the foregoing reasons, we deny plaintiffs' motion for summary judgment on Counts I and II of the Complaint. We grant plaintiffs' motion for summary judgment as to Counts III and IV of the Complaint.

Plaintiffs request an entry of final judgment on their claims pursuant to Federal Rule of Civil Procedure 54(b).[9] We believe

---

[8] In diversity cases, federal courts look to state law to determine the availability of, and rules for computing, pre-judgment interest. See Medcom Holding Co. v. Baxter Travenol Labs., Inc., 106 F.3d 1388, 1405 (7th Cir. 1997). The parties agree that Michigan law applies.

[9] Federal Rule of Civil Procedure 54(b) provides in relevant part: "When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

that this would be appropriate as to Counts III and IV because we have made a final determination on those discrete claims and there is no just reason for delay. Further delay may hinder plaintiffs' chances of collecting on the judgment.[10]

Accordingly, plaintiffs are directed to promptly submit a proposed final judgment order with respect to Counts III and IV, The proposed order should state that this is a final decision as to Counts III and IV and that there is no just reason for delay. The order should also state the reasons for this determination: Lason's liability on these claims is uncontested. Delay in issuing final judgment might prejudice plaintiffs' ability to collect on the judgment. No substantial reason appears why plaintiffs should not be entitled to collect upon the claims adjudicated in their favor immediately.[11] In addition, the order should expressly direct the entry of judgment and set forth exact amounts.

---

[10] This conclusion is based on plaintiffs' strong assertions, and Lason's weak denials, that Lason is in financial distress. This topic was discussed at the Rule 16 conference, and counsel for Lason did not deny that Lason has financial problems. And although Lason argues in its surreply that plaintiffs have not presented specific evidence of these financial problems, Lason still does not expressly deny that they exist.

[11] "When no substantial reason appears why a litigant should not be entitled to collect upon a claim adjudicated in its favor immediately, the appellate courts will sustain the entry of judgment upon that claim by the trial court." Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944, 951 (7th Cir. 1980). The court in Bank of Lincolnwood distinguished cases where the Rule 54(b) determination means that there is no just reason to delay an appeal from cases where the determination means that there is no just reason to delay execution on the judgment. Id. at 952 n.10. This case falls in the latter category because an appeal does not seem to be imminent; rather, there is simply no reason why plaintiffs should not be able to collect on these claims immediately.

DATE:      October 2, 2001

ENTER:     _____
           John F. Grady, United States District Judge